AO 91 (Rev. 5/85) Criminal Complaint

**FILED IN OPEN COURT**
U.S.D.C. - Atlanta

# ORIGINAL

## United States District Court

### NORTHERN DISTRICT OF GEORGIA

JUL 0 3 2006

LUTHER D. THOMAS, CLERK
By: _____ Deputy Clerk

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

Ibrahim Dimson

Joya Williams

Edmund Duhaney

CASE NUMBER: 1:06-MJ-818

~~UNDER SEAL~~

Unsealed 7·5·06

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>July 3, 2006</u> in <u>Fulton</u> County, in the Northern District of Georgia defendant(s) did, Track Statutory Language of Offense)

knowingly and unlawfully obtain trade secrets from the Coca Cola Company ("Coca Cola") with the intent to convert them to their economic benefit; and. having devised a scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce a writing for the purpose of executing such scheme.

**ISSUED AND DELIVERED**
**TO U.S. MARSHAL** 7-3-06
BY: _____ **DEPUTY CLERK**

in violation of Title <u>18</u> United States Code, Section(s) <u>1832</u> and <u>1343</u>.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.        (X) Yes        ( ) No

Signature of Complainant
Lee Kirschbaum

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

<u>July 3, 2006</u>                                   at        <u>Atlanta</u>
Date                                                          City and State

Joel M. Feldman
<u>United States Magistrate Judge</u>                          Signature of Judicial Officer
Name and Title of Judicial Officer
AUSA Randy S. Chartash

## AFFIDAVIT

I, Lee C. Kirschbaum, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over three years.

2.    In the past three years, I have primarily investigated financial crimes and fraud in the performance of my duties as a member of a White Collar Crime Squad.

3.    My experience as an FBI agent, as well as the experiences of other White Collar Crime Squad investigators, has provided me insight into the methods and materials commonly utilized to commit financial crimes.

4.    The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or



others have learned during the course of this investigation.

5.    As set forth more fully below, there is probable cause to believe that JOYA WILLIAMS, IBRAHIM DIMSON, and EDMUND DUHANEY knowingly and unlawfully obtained trade secrets from The Coca Cola Company ("Coca Cola") with intent to convert them to their economic benefit, in violation of 18 U.S.C. § 1832, and, having devised a scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce a writing for the purpose of executing such scheme, in violation of 18 U.S.C. § 1343.

## DEFINITIONS

6.    The term "email" is short for electronic message, the transmission of messages over electronic communications.  When an individual computer user sends an email message, the process is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination.

7.    The term "Internet Protocol (IP) Address" refers to a unique numeric address used to identify computers on the Internet. Every computer connected to the Internet, or group of computers using the same account to access the Internet, must be assigned an IP address so that Internet traffic sent from and directed to that computer is directed properly from its origination point to its destination.   IP addresses are typically assigned by Internet service providers (ISP), such as AOL, Earthlink or cable companies. The ISP may assign a different IP address to a customer each time



the customer establishes an Internet connection referred to as "dynamic IP addressing" or the ISP may assign a permanent IP address to a customer referred to as "static IP addressing". Either way, the IP address used by a computer attached to the Internet must be unique at a particular time.  Typically, ISPs log the connections made to the Internet by customer which means the ISP can identify the customer assigned to a specific IP address at a particular time and date.

### THE INVESTIGATION

8.   On May 19, 2006, Coca Cola, the world's leading manufacturer, marketer, and distributor of non-alcoholic beverage concentrates and syrups with their corporate headquarters in Atlanta, Georgia, received a copy of a letter mailed to PepsiCo in Purchase, New York in an official Coca Cola business envelope.  The letter was sent from an individual claiming to be employed at a high level with Coca Cola offering "very detailed and confidential information."  The letter, which was post-marked on May 08, 2006, from the Bronx, New York, indicated that this exclusive offer was only available for the next two weeks and the individual was willing to provide proof of the information.  The individual provided the name "Dirk" with the telephone number (718) 772-6665 to initiate contact.

9.   On May 24, 2006, Coca Cola provided a copy of the document to the Atlanta Office of the FBI with the explanation that



the information outlined in the letter was considered highly confidential.

10. On May 25, 2006, Special Agent (SA) Gerald A. Reichard, acting in an undercover capacity, contacted the unidentified individual by dialing the telephone number (718) 772-6665.  The individual identified himself as "Dirk" and confirmed the letter was sent by him to Purchase, New York.  Dirk explained that he had in his "possession" half of a box of Coca Cola documents, and that he had unlimited access to additional information.

11. The individual provided the name "Dirk" with the telephone number (718) 772-6665 to initiate contact.  Information from Sprint Corporate Security regarding this Nextel telephone number listed the account billing name Baraka Dimson with the user name of "Ibrahim 25."   LEXIS-NEXIS searches listed the name "Ibrahim Dimson" as a potential relative of Baraka Dimson.

12. Call records for Dirk's telephone number, (718) 772-6665, on May 8, 2006, the day the initial letter was sent to PepsiCo, list multiple inbound and outbound telephone calls to and from Atlanta, Georgia telephone numbers, including telephone numbers (404) 438-0047 for EDMUND DUHANEY and (770) 912-1726 for JOYA WILLIAMS, a Coca Cola employee.

13. Call records for Dirk's telephone on May 25, 2006 after the initial conversation with SA Reichard at 8:53 PM, listed outbound calls to EDMUND DUHANEY, (404) 438-0047, at 9:10 PM with

a duration of over three minutes, at 9:56 PM with a duration over one minute, and at 10:59 PM with a duration over nine minutes. Additionally, call records listed outbound calls to JOYA WILLIAMS, (770) 912-1726, an employee at Coca Cola, at 10:23 PM with a duration of over fifteen minutes and at 10:41 PM with a duration of over seventeen minutes.

14. JOYA WILLIAMS was identified as a current employee at Coca Cola, as an Executive Administrative Assistant. Corporate Security at Coca Cola informed the FBI that JOYA WILLIAMS as an Executive Administrative Assistant had access to information and materials described by Dirk.

15. On May 26, 2006, SA Reichard received fourteen pages of information with the Coca Cola logo marked "Classified - Confidential" and "CLASSIFIED - Highly Restricted"[1] from Dirk.

16. On May 26, 2006, Coca Cola was provided copies of the documents. Coca Cola confirmed that these documents were valid and highly confidential and were considered highly classified proprietary information. Coca Cola further explained the documents were only available to a limited number of employees. Coca Cola further explained that it takes reasonable measures to keep secret its confidential information, including maintaining limited numbers

---

[1] Further description of the items received and offered has not been included in the affidavit due to confidentiality of the information. Coca Cola has explained that the disclosure and release of the sensitive information would have an adverse financial impact.



of the documents, and that the documents themselves have independent economic value.

17.  On May 30, 2006, SA Reichard received eleven faxes with fourteen pages of information from Dirk.  The information provided by Dirk included documents marked highly confidential from a new Coca Cola project dated May 12, 2006.

18.  On May 30, 2006, SA Reichard contacted Dirk by telephone. Dirk provided the email account POWERBLOCK2005@YAHOO.COM for correspondence related to the sale of information.  Dirk also requested $10,000 for the documents sent as proof and as good faith money for additional purchases.  Dirk provided the name IBRAHIM DIMSON on a Bank of America bank account to be used for the $10,000 payment.  Information received from Bank of America revealed that the account specified was listed in the name of IBRAHIM DIMSON

19.  Information from an Internet search listed the name IBRAHIM DIMSON with the telephone number (718) 772-6665, and the email address "ibrahimdimson@optonline.net", as the administrative contact for a website domain "blackmuslimlounge.com".

20.  On May 31, 2006, Coca Cola was provided copies of the documents received by Dirk on May 30, 2006.  Coca Cola confirmed that these documents were valid trade secrets of Coca Cola and highly confidential.

21.  On June 2, 2006, SA Reichard sent an email message to Dirk.    Dirk    responded    from    the    email    account

POWERBLOCK2005@YAHOO.COM.  The following information was obtained

from the email message:

> Date: Fri, 2 Jun 2006
> From:  "Ibrahim D" <powerblock2005@yahoo.com>
> I must see some type of seriousness on there
> part, if I'm to maintain the faith to continue
> with you guys, or if I need to look towards
> another entity that will be interested in a
> relationship with me.
>
> I have the capability of obtaining information
> per request. All you need do is tell me
> what you're interested in and I will let you
> know if I have it or can get it and how long
> it
> will take.
> I have information that's all Classified and
> extremely confidential, that only a handful
> of the top execs at my company have seen. I
> can even provide actual products and
> packaging of certain products, that no eye has
> seen, outside of maybe 5 top execs.
> I need to know today, if I have a serious
> partner or not. If the good faith Moneys is in
> my
> account by Monday, that will be an indication
> of your seriousness. Please wire $9000.
> instead of the previously mentioned $10,000.
>
> After you receive the Fax, tell me when and
> how you want me to send the info and Ill let
> you know what it'll cost for that information,
> and we can move on from there.
>
> I hope to hear from you soon.
> Dirk

22.  On June 6, 2006, SA Reichard received two additional

faxes of documentation from Dirk.  SA Reichard confirmed the

receipt of the information by sending an email message to

POWERBLOCK2005@YAHOO.COM.

23.  On June 7, 2006, Coca Cola was provided copies of the



documents.   Coca Cola confirmed that these documents were valid
trade secrets of Coca Cola and highly confidential.

24.  On June 8, 2006, SA Reichard contacted Dirk by telephone
at (718) 772-6665.  Dirk agreed to the amount of $5,000 for the
documents received as proof and as good faith money for additional
purchases.  Dirk agreed to an amount of $75,000 for the purchase of
a highly confidential product sample from a new Coca Cola project.
Dirk agreed to the sum of $30,000 in United States currency being
provided at the time of the transaction with an additional $45,000
being provided after testing of the sample.   Dirk provided
additional documentation by fax.

25.  On June  9,  2006,  Dirk,  using  the  email  account
POWERBLOCK2005@YAHOO.COM confirmed the wire transfer of the $5,000.
The following information was obtained from the email message:

> Date: Fri, 9 Jun 2006
> From: "Ibrahim D" <powerblock2005@yahoo.com>
>
> I received the wire earlier today.
>
> Dirk

26.  On June 10, 2006, SA Reichard received an email message
from  Dirk  using  the  account  POWERBLOCK2005@YAHOO.COM.   The
following information was obtained from the email message.

> Date: Sat, 10 Jun 2006
> F r o m :     I b r a h i m     D "
>
> <powerblock2005@yahoo.com>
>
> and  just  to  let  you  know,  I  have
> documents that are all extremely valuable to



the right group. Let me know what youre
interested in and Ill let you know if I have
it or can obtain it.

Dirk

27. On June 12, 2006, at approximately 7:30 PM, video
surveillance of JOYA WILLIAMS was conducted by Coca Cola. The
video footage shows JOYA WILLIAMS at her desk going through
multiple files looking for documents. After locating the
appropriate documents, JOYA WILLIAMS places and stuffs the papers
into her personal bag. In some cases, JOYA WILLIAMS stuffs papers
into what appears to be a plastic bag before placing the plastic
bag into her personal bag. Additionally, JOYA WILLIAMS was
observed holding a liquid container with a white label which
resembled the description of new Coca Cola product sample before
placing it into her personal bag.

28. On June 16, 2006, SA Reichard, acting in an undercover
capacity, met with Dirk at the Hartsfield-Jackson International
Airport located in Atlanta, Georgia. According to SA Reichard,
Dirk's likeness matched that of the description and recent
photographic images of IBRAHIM DIMSON, which were provided to
Reichard on June 14, 2006 by DIMSON'S Probation Officer, Michael
Cox, in New York. While SA Reichard was talking to Dirk on
telephone number (718) 772-6665, SA Reichard observed Dirk talking
on his cellular telephone walking toward SA Reichard. During the
meeting, Dirk provided a brown Armani Exchange bag containing one



manila envelope with documents marked highly confidential and one glass bottle with a white label containing a liquid product sample. SA Reichard paid Dirk $30,000 in $100 and $50 bills of United States currency contained within a yellow Girl Scout cookie box with the agreement that after successful testing of the product sample, an additional $45,000 would be paid.

29.   At the conclusion of the meeting, Dirk exited the airport and entered a silver Chrysler 300 automobile, registered to Armada Vehicle Rental.  Surveillance of the silver Chrysler 300 observed the vehicle exit the airport and travel to the Quiktrip on Riverdale near I-285.  An individual matching the description of EDMUND DUHANEY was observed with the individual matching the description of IBRAHIM DIMSON, a.k.a. Dirk.  After getting fuel at the Quiktrip, the Chrysler 300 with the two individuals were observed traveling to the 4415 Wellington Terrace, Decatur, Georgia, the residence of EDMUND DUHANEY.

30.   Information provided by Michelle Eubanks, Senior United States Probation Officer, verified the telephone number (404) 438-0047 and address of 4415 Wellington Terrace, Decatur, Georgia, for EDMUND DUHANEY.

31.   Call records for EDMUND DUHANEY's telephone number (404) 438-0047 on June 16, 2006, the day of the $30,000 transaction between SA Reichard and Dirk, list multiple inbound and outbound calls to Dirk, (718) 772-6665, and to JOYA WILLIAMS, (770) 912-



1726.

32.   On June 16, 2006, Coca Cola was provided a portion of the product sample for testing.  Coca Cola verified that the liquid was a valid product sample produced in The Coca Cola Company's pilot plant as part of a highly confidential new project.

33.   On June 20, 2006, SA Reichard contacted Dirk by telephone on (718) 772-6665.   Dirk explained that he had additional documentation to provide.

34.   On June 21, 2006, SA Reichard received a four page fax from Dirk to include a copy of an email message from a Coca Cola executive's email account dated June 19, 2006.

35.   On June 22, 2006, Coca Cola was provided copies of the documentation.  Coca Cola verified that the documents were valid trade secrets of Coca Cola and confidential.  Coca Cola verified that the printed email was located in JOYA WILLIAMS supervisor's email account and JOYA WILLIAMS printed three copies of a document with the same subject line as the email message on June 19, 2006.

36.   On June 22, 2006, Dirk provided a list of twenty items in his possession by email from the account POWERBLOCK2005@YAHOO.COM.

37.   On June 27, 2006, SA Reichard contacted Dirk by telephone.  Dirk agreed to a price of $1.5 million for the items provided on his previous list.  Dirk provided a Bank of America account number with the business name NOBLE HOUSE GROUP LLC for the wire transfer of funds.



38.   The Bank of America account provided by Dirk with the business name NOBLE HOUSE GROUP LLC was opened on June 27, 2006 with the names IBRAHIM DIMSON and EDMUND DUHANEY and the address 4415 Wellington Terrace, Decatur, Georgia listed for the account.

## CONCLUSION

39.   Based upon the information above, I believe that there is probable cause to believe that IBRAHIM DIMSON, JOYA WILLIAMS, and EDMUND DUHANEY have knowingly and unlawfully obtained trade secrets from The Coca Cola Company with intent to convert them to their economic benefit, in violation of 18 U.S.C. § 1832, and, having devised a scheme to defraud, caused to be transmitted by means of wire communications in interstate commerce a writing for the purpose of executing such scheme, in violation of 18 U.S.C. § 1343.